**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 1:19-cr-112 (LO)** |
| **v.** | ) | |
| | ) | **The Hon. Liam O'Grady** |
| **BRANDON SOBOTTA,** | ) | |
| | ) | **Sentencing Hearing: Sept. 13, 2019** |
| **Defendant.** | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Brandon Sobotta immediately took responsibility for his offense following his arrest. Prior to then, Mr. Sobotta had distanced himself from his childhood friend, Richard Pak, in order to overcome the cocaine addiction that Pak had fostered and exploited.[1] Since his arrest, Mr. Sobotta has rededicated himself to his sobriety, has been a model inmate, and has expressed genuine contrition in every way possible.[2] In light of his acceptance of responsibility, the many mitigating factors from his background, his minor role in the offense, and other factors to be adduced at the sentencing hearing, a sentence of time-served is appropriate under the facts of this case.

## I. PRESENTENCE INVESTIGATION REPORT AND GUIDELINE CALCULATIONS.

Undersigned counsel reviewed the Presentence Investigation Report (Doc. 154 ("PSR"), with Mr. Sobotta and, thereafter, submitted two minor clarifications to the Probation Officer by prior correspondence. The Probation Officer made the requested corrections and added several sections to the PSR, which did not affect the original guideline calculation. The PSR calculates Mr. Sobotta's base offense level to be 14 (PSR at ¶ 82), and his Criminal History Category at IV.

---

[1] Let. from Brandon Sobotta to Hon. Liam O'Grady, at 6 (a copy of this letter is attached as **Exhibit A**).
[2] *Id.* at 1.

(*Id. a*t ¶ 103) The PSR then applies a two two-level downward departures – one for Mr. Sobotta's acceptance of responsibility, USSG §3E1.1(a), and one for his minor role in the offense, USSG §3B1.2, resulting in a total offense level of 10 and recommended sentencing range of 15-21 months. (*Id. a*t ¶¶ 85, 89, 90) Mr. Sobotta agrees with the accuracy of these calculations but submits that an additional downward departure is appropriate in this case because the offense was committed under coercion and/or duress. *See* USSG §5K1.12. Regardless, a sentence of time-served is sufficient sentence, but not greater than necessary under the circumstances of this case.

**A.     Adjustment for mitigating role pursuant to U.S.S.G §3B1.2.**

Under the plea agreement, the United States agreed Mr. Sobotta's participation in the offense – a single drug sale – was "minor" within the meaning of USSG §3B1.1, (Doc. 109, at 4), resulting in a two-level decrease in his base offense level. The PSR accurately accounts for Mr. Sobotta's mitigating role and applies that two-level decrease. (PSR at ¶ 85)

**B.     Downward Departure pursuant to U.S.S.G §5K2.12.**

Where a defendant committed his offense due to serious coercion or duress, insufficient too rise to the level of a complete defense, the court is authorized to decrease the sentence below the applicable guideline range. USSG §5K1.12. Coercion or duress will be considered "sufficiently serious too warrant departure" where "it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party." A downward departure pursuant to §5K1.12 is appropriate under the facts of this case.

Mr. Sobotta was childhood friends with Richard Pak and, when he developed an addiction to cocaine following his brother's death, he fell into Pak's debt.[3] When the debt reached approximately $6,000, Pak threatened Mr. Sobotta to give him "beat-down" or to "beat [his] ass"

---

[3] Sobotta let. at 2, 3-4.

in order to extort payment and intimidate.[4] Because Mr. Sobotta had witnessed at least one such beat-down personally and was well-aware of Pak's penchant for violence and revenge, this was no idle threat.[5] Upon learning that his son was going to be beaten severely, Mr. Sobotta's father spoke with Pak on the phone and promised to pay off his son's debt. Pak agreed and picked up a cash payment soon after.[6]

Although Mr. Sobotta promised his father he would stop using drugs, and intended to distance himself from Pak, he was unable to overcome his addiction. Soon he began obtaining cocaine from Pak anew. As he had previously, Pak "fronted" the cocaine with the understanding Mr. Sobotta would sell the drugs and repay Pak, but he ended up using most of the cocaine himself and soon fell back into debt.[7] When Mr. Sobotta was again unable to pay his debt, Pak gave him an ultimatum: either (a) participate in the offense conduct or (b) travel to California with $10,000.00 in cash and go to work on one of the drug syndicate's marijuana farm.[8] Based on his prior experience with Pak, which included an awareness that Pak routinely used violence to collect debts, Mr. Sobotta knew the ultimatum carried the threat of violence if he did not agree to commit a drug crime.[9] Because Mr. Sobotta reasonably believed he faced an imminent and specific threat of violence if he did not agree to commit this offense, a downward departure under §5K2.12 is appropriate here. *See United States v. Keller*, 376 F.3d 713, 719 (7th Cir. 2004) (describing §5K2.12 as "significantly more foregiving than the traditional defense of duress."); *United States v. Sachdev*, 279 F.3d 25, 29 (1st Cir. 2002) (threat of physical harm may be either explicit or implicit); *United States v. Amor*, 24 F.3d 432, 439 (2d Cir. 1994) (relationship between gun

---

[4] *Id.* at 4
[5] *Id.* at 4-5.
[6] *Id.*
[7] *Id.* at 5.
[8] *Id.* at 5; PSR at ¶¶ 77, 80.
[9] Sobotta let. at 5-6.

acquisition and threats was sufficiently close that it was fair for court to conclude there was a causal nexus; duress need not lead "*directly* to the offense.").

Application of this downward departure allows the Court broad discretion to fashion an appropriate reduction in Mr. Sobotta's total offense level or ultimate sentence and, strongly supports the imposition of a sentence of time-served.

## II.    NON-GUIDELINE SENTENCING CONSIDERATIONS.

### A.    History and Characteristics of the Defendant.

Mr. Sobotta's early life was defined by the strife of his parent's conflicted marriage, his mother's infidelity, the dissolution of that marriage, and the abuse and chaos that followed layered upon a variety of pre-existing mental disorders and physiological conditions that made him uniquely vulnerable to addiction and self-destructive impulses. *See* Saladin, M.E., et al, *Trauma and Substance Abuse cue reactivity in individuals with comorbid posttraumatic stress disorder and cocaine or alcohol dependence*, Drug Alcohol Dependence, 65(2), at 115-27 (2002), *available at* https://www.ncbi.nih.gove/pubmed/11772473; "Connection Between Childhood Trauma and Addiction in Adulthood" *available at* https://www.dualdiagnosis.org/unfortunate-connection-childhood-trauma-addiction-adulthood; Tnmyr, L., Thornton, T., Draca, J., Wekerle, C., *The Childhood Maltreatment and Adolescent Substance Abuse Relationship: A Critical Review*, Current Psychiatry Reviews, 6, at 223-34 (2010). Lacking a stable home life and social supports, Mr. Sobotta fell in with a tough group of Asian youths, led by codefendant Richard Pak, and that association gave him a sense of identity and belonging.[10] Rather than provide a pro-social outlet for Mr. Sobotta's burgeoning emotional problems, associating with the precursor to a violent

---

[10] Sobotta let. at 2.

street-gang lent itself to becoming involved with increasingly harder drugs, and eventually addiction, as well as a deep awareness of the violence that later became commonplace.

Mr. Sobotta reached a breaking point following the suicide of his beloved younger brother Trevor in 2017. In a crude effort to numb his guilt and shame, Mr. Sobotta began using increasing amounts of cocaine procured from childhood friend Richard Pak. For Pak, Mr. Sobotta was both a customer and someone to exploit. When Mr. Sobotta fell behind in their buyer-seller relationship, Pak showed no qualms about using violence to enforce his authority despite their longstanding friendship. Eventually, following a second set of threats, and a conscripted drug sale, Mr. Sobotta eventually gathered sufficient internal fortitude to distance himself from Pak and his associates and begin addressing his addiction. It was in the wake of the decisive action that Mr. Sobotta was arrested.

Despite his myriad of personal challenges and setbacks, Mr. Sobotta is a young man with significant potential to reform his life and to make positive contributions to his family and to society in general. He has job skills – in both construction and sales – a now stable relationship with is father and mother, a commitment to his children and a renewed sense of purpose. He has been a model inmate at the Alexandria Adult Detention Center and has done everything that the judicial system could ask for as a form of contrition. Mr. Sobotta is remorseful for his offense and has demonstrated that in word and deed.

Based on his of character and history alone, Mr. Sobotta has been sufficiently punished and further incarceration would serve no beneficial social purpose.

### B.     Nature and Circumstances of the Offense.

Distributing cocaine is a serious offense that contributes to the erosion of our community and a multiplicity of social problems. Mr. Sobotta's life and his younger brother's tragic death are

direct byproducts of substance abuse and addiction. But the offense conduct in this case is also the byproduct of exploitation, coercion, and duress. Mr. Sobotta was in the throws of a serious cocaine addiction when he engaged in the single drug transaction for Pak. The sale, to an undercover police officer, arose from his reasonable fear that he would be violently assaulted by Richard Pak if he did not make the cocaine distribution for the Pak brother's gang. Although Mr. Sobotta was not a gang member, he and Richard Pak were childhood friends. Over the years Mr. Sobotta purchased marijuana from Pak had developed a buyer-seller relationship in addition to their friendship. When Mr. Sobotta became addicted to cocaine following his brother's suicide, he fell into debt and, when he could not pay, Richard Pak threatened to commit serious physical violence against him. To stave off violence or being conscripted into the Pak enterprise, Mr. Sobotta chose the lesser of harms and committed the single distribution of cocaine.

### C. Seriousness of the Offense, Respect for the Law, and Just Punishment.

Mr. Sobotta acknowledges distributing cocaine is a serious offense that deserves punishment. Mr. Sobotta is remorseful for the myriad of decisions he made that preceded the offense conduct and for the potential hard he could have caused to the community. As recounted in the PSR and throughout this pleading, however, Mr. Sobotta's actions are not worthy of further punishment than the approximately seven months pretrial detention he has already completed.

### D. Unwarranted Sentencing Disparities.

Other than individuals who will not be indicted or, if indicted, will receive probation, Mr. Sobotta is the least culpable person implicated in this far-reaching prosecution. As such, a sentence of time-served is appropriate under the circumstances of this case and will not result in an unwarranted sentencing disparities for Mr. Sobotta or any other defendant.

### III.     IMPOSITION OF A FINE.

Although the Court is authorized to impose a fine in this case, pursuant to USSG §5K1.2, Mr. Sobotta requests that no fine be imposed because, as the PSR correctly notes, his financial circumstances are bleak. (PSR at ¶ 138)

### IV.     CONCLUSION.

WHEREFORE, based on the foregoing reasons and any others that may appear to the Court or may develop at the sentencing hearing, Mr. Sobotta respectfully requests that this Honorable Court sentence him to time served.

Respectfully submitted,
Brandon Sobotta
By Counsel

_____/s/_____

Joseph T. Flood, VSB #71716
Sheldon & Flood, PLC
10621 Jones Street, Suite 301-A
Fairfax, VA  22030
(703) 691-8410
(703) 251-0757 (fax)
jflood@sfhdefense.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of September, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

James L. Trump, Esq.
Carina A. Cuellar, Esq.
Assistant United States Attorneys
Justin W. Williams United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Jim.trump@usdoj.gov
Carina.Cuellar@usdoj.gov

_____/s/_____
Joseph T. Flood, VSB #71716
Sheldon & Flood, PLC
10621 Jones Street, Suite 301-A
Fairfax, VA 22030
(703) 691-8410
(703) 251-0757 (fax)
jflood@sfhdefense.com